UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH KERWIN,

        Petitioner,                                Civil Action No. 22-cv-12761

v.                                                 HON. MARK A. GOLDSMITH

STARBUCKS CORPORATION,

        Respondent.
_____/

**OPINION & ORDER**
**(1) GRANTING IN PART AND DENYING IN PART PETITIONER'S PETITION FOR PRELIMINARY INJUNCTION (Dkt. 1), (2) DENYING RESPONDENT'S MOTION FOR ORDER TO SHOW CAUSE WHY PETITION FOR PRELIMINARY INJUNCTION SHOULD NOT BE DISMISSED (Dkt. 25), AND (3) GRANTING PETITIONER'S MOTION TO SUPPLEMENT RECORD (Dkt. 29)**

Petitioner Elizabeth R. Kerwin—Regional Director for the Seventh Region of the National Labor Relations Board (NLRB or Board)—seeks injunctive relief under § 10(j) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(j), in relation to an ongoing Board proceeding against Respondent Starbucks Corporation (Dkt. 1). Starbucks moves for an order to show cause why the petition should not be dismissed (Dkt. 25). For the reasons that follow, the Court grants in part and denies in part Kerwin's petition and denies Starbucks's show-cause motion.[1] The Court will enter a separate order specifying the relief granted.

---

[1] The Court held a hearing on the pending motions on February 7, 2023. In addition to the petition and show-cause motion, the briefing includes Starbucks's answer to the petition (Dkt. 21), Kerwin's reply (Dkt. 22), and Kerwin's response to the show cause motion (Dkt. 28). The Court also grants Kerwin's motion to supplement the record with exhibits admitted into evidence as part of the Board proceeding (Dkt. 29).

## I. BACKGROUND

This case arises out of Starbucks's termination of an employee in alleged violation of the NLRA's protections. Having received a favorable finding from an administrative law judge (ALJ) in the ongoing Board proceeding, Kerwin seeks interim injunctive relief from this Court while the Board's review of the parties' exceptions is pending. Starbucks argues that injunctive relief is not appropriate, especially because it has recently offered to reinstate the discharged employee.

### A. Union Campaign and Termination of Starbucks Employee

Kerwin submits that, beginning in 2021, the Workers United union commenced a "highly publicized campaign to organize Starbucks employees across the country." Mem. in Supp. Pet. at 3. Hannah Whitbeck was a Starbucks employee working as a shift supervisor at a store located on Main Street in Ann Arbor, Michigan. See Answer at 5. Kerwin characterizes Whitbeck as the "face of the Michigan campaign," including "in the media." Mem. in Supp. Pet. at 3. (capitalization modified).

On or about April 11, 2022, Starbucks terminated Whitbeck's employment. See Pet. at 4. Kerwin contends that the termination was motivated by Whitbeck's labor-related activities. Starbucks, in contrast, submits that the discharge arose from Whitbeck's decision to leave work early on one occasion, which violated Starbucks's "two-partner" rule by forcing another employee to manage the store alone for about twenty to thirty minutes. Answer at 7–10.

### B. Proceedings before NLRB

On April 11, 2022, the Workers United union filed charges against Starbucks, alleging that Starbucks unlawfully interfered with Whitbeck's rights under § 7 of the NLRA and violated §§ 8(a)(1), (3), and (4) of the NLRA (Dkt. 1-2). The Board investigated and then filed a consolidated complaint and notice of hearing against Starbucks on July 27, 2022. NLRB Compl. (Dkt. 1-3).

ALJ Geoffrey Carter conducted a four-day hearing in August 2022 and then issued a decision finding that Starbucks had violated §§ 8(a)(3) and (1) of the NLRA by discharging Whitbeck because she engaged in activities protected by the NLRA. See ALJ Decision at 31 (Dkt. 1-4). The Board's review is not complete; both parties filed exceptions to the ALJ's decision with the NLRA (Dkts. 21-4, 21-6), which are currently pending.

### C. Issues Before This Court

Kerwin seeks relief under § 10(j) of the NLRA, which allows the Board—"upon issuance of a complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice"—to petition a district court "for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j). The court may grant this relief "as it deems just and proper." Id.; see also McKinney v. Ozburn-Hessey Logistics, LLC, 875 F.3d 333, 338–339 (6th Cir. 2017) (explaining that district court had jurisdiction to consider Board's § 10(j) petition while "the Board [was] currently reviewing the case" after NLRB regional director had filed exceptions to ALJ findings).

Kerwin's petition requests the following injunctive relief:

- Starbucks is enjoined from "discharging employees" for supporting a labor organization—or from otherwise "interfering with, restraining, or coercing employees in the exercise of their rights" under Section 7 of the NLRA—at any Starbucks's store in the United States or its territories, Pet. at 6;

- Starbucks is directed to offer Whitbeck "interim reinstatement to her former position, or if that position no longer exists, to a substantially equivalent position, without prejudice to her seniority or any other rights and privileges previously enjoyed," id. at 7;

- Starbucks is directed to post physical copies of this Court's order at all of Starbucks's stores in the United States and its territories, as well as translations, in "all [] places where [it] typically posts notices to its employees"; and to distribute electronic copies and translations of the same to all employees, id.; and

- Starbucks is directed to "convene one or more mandatory meetings" at the Ann Arbor, Michigan store, during which the District Court's Order will be read to the bargaining unit employees, id. at 7–8.

In its show cause motion, Starbucks submits that, on January 30, 2023, it "sent a letter to [Whitbeck] offering unconditional interim reinstatement to her former position without prejudice to her seniority or any other rights or privileges previously enjoyed—the exact relief Petitioner seeks." Mot. at 5. Starbucks argues that, "[i]n light of these changed circumstances, there is no basis to grant an injunction pursuant to Section 10(j) and Respondent respectfully requests that the Court order a show cause hearing as to why the Petition should not be dismissed." Id. Kerwin, conversely, maintains that "[t]he complete panoply of interim relief sought by the Petitioner is necessary . . . ." Resp. at 11.

## II. ANALYSIS

"Section 10(j) reflects Congress'[s] view that interim injunctive relief to restore and preserve the status quo, pending final Board adjudication, may be required to avoid frustration of the basic remedial purposes of the Act and possible harm to the public interest." Fleischut v. Nixon Detroit Diesel, Inc., 859 F.2d 26, 28–29 (6th Cir. 1988); see also Ozburn-Hessey, 875 F.3d at 342 (discussing appropriateness of injunctive relief to "restore . . . status quo"). To resolve a § 10(j) petition, a district court considers two issues: whether there is "reasonable cause to believe" that a respondent has violated the NLRA and whether temporary injunctive relief is "just and proper." Ahearn v. Jackson Hosp. Corp., 351 F.3d 226, 234–235 (6th Cir. 2003).[2]

**A. Reasonable Cause to Believe Starbucks Violated the NLRA**

The United States Court of Appeals for the Sixth Circuit has explained:

The Board's burden in establishing reasonable cause is relatively insubstantial. . . . It need not prove a violation of the NLRA nor even convince the district court of the validity of []

---

[2] Starbucks contends that the Court should apply the traditional four-factor test for determining whether preliminary injunctions are appropriate. Answer at 3. However, Starbucks concedes that the two-factor test identified above is applicable "[u]nder current Sixth Circuit law." Id. at 13 (citing Ozburn-Hessey, 875 F.3d at 339). The Court applies the two-factor test.

4

its theory of liability; instead, the Board need only show that its legal theory is substantial and not frivolous. . . . So long as facts exist which could support the Board's theory of liability, the district court's findings [that reasonable cause exists] cannot be clearly erroneous.

Ozburn-Hessey, 875 F.3d at 339 (punctuation modified).

Courts sometimes divide this reasonable cause inquiry into a two-step analysis, asking whether (i) the NLRB's theory is substantial and (ii) facts support that legal theory. See McKinney v. Starbucks Corp., No. 2:22-CV-2292-SHL-CGC, 2022 WL 5434206, at *9–17 (W.D. Tenn. Aug. 18, 2022) (finding it just and proper to order injunctive relief upon finding reasonable cause to believe Starbucks violated NLRA by terminating employees).

### i. Substantial Legal Theory

Kerwin asserts violations of §§ 8(a)(3) and (1) of the NLRA based on Whitbeck's termination. See Pet. at 3–5. These sections make it "an unfair labor practice for an employer":

> (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7; [or]
>
> (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.

29 U.S.C. §§ 158(a)(1) and (3). Kerwin submits that the burden-shifting approach outlined in Wright Line, A Div. of Wright Line, Inc., 251 NLRB 1083 (1980) applies to determine whether Starbucks violated the NLRA. See Mem. in Supp. Pet. at 9–10.[3]

---

[3] Under the Wright Line approach:

> [T]he NLRB's General Counsel must establish a prima facie case of discrimination by setting forth evidence that supports an inference that the employee's protected activities were a motivating factor in the employer's decision. In particular, the General Counsel must demonstrate that (1) the employee was engaged in protected activity; (2) [] the employer knew of the employee's protected activity; and (3) [] the employer acted as it did on the basis of anti-union animus. . . .

5

Kerwin's presentation of this legal theory is sufficient to make the NLRB's theory "substantial." See Ozburn-Hessey, 875 F.3d at 340 (finding that Board "satisfie[d] the substantial legal theory requirement" by "alleg[ing] that [employee] was reassigned to a more arduous job as a result of her pro-Union activities"); McKinney v. Starbucks, 2022 WL 5434206, at *10 (finding legal theory substantial where parties agreed Wright Line test applied).

### ii. Facts in Support of Legal Theory

The Court next considers whether "facts exist which could support the Board's theory of liability." Ozburn-Hessey, 875 F.3d at 339 (punctuation modified). The ALJ's determination that Starbucks violated the NLRA provides "support" for a finding that reasonable cause exists. Ahearn, 351 F.3d at 238; see also Paulsen v. Remington Lodging & Hosp., LLC, 773 F.3d 462, 471 (2d Cir. 2014) (finding reasonable cause and stating that (i) court was "required to defer to the regional director's judgment" as to finding that employee "had been discharged as a consequence of her support for union organizing" and that (ii) ALJ's finding of violation "reinforces that conclusion"). "[I]t is not the job of the district court, in considering a § 10(j) petition, to adjudicate the merits of the unfair labor practice case." Ahearn, 351 F.3d at 237 (punctuation modified). "Indeed, fact-finding is inappropriate in the context of a district court's consideration of a 10(j) petition." Id.

The Board's presentation of facts—consistent with findings made by the ALJ—is more than sufficient to support its theory that Starbucks violated §§ 8(a)(3) and (1) of the NLRA. The Board submits that Starbucks was aware of Whitbeck's involvement in union activity, including

---

> Once the General Counsel has made out a prima facie case of anti-union animus, the burden shifts to the employer to prove by a preponderance of the evidence that it would have taken the same action even in the absence of protected conduct.

FiveCAP, Inc. v. NLRB., 294 F.3d 768, 777–778 (6th Cir. 2002) (punctuation modified).

because she wore a button to work in open support of "Starbucks Workers United." Mem. in Supp. Pet. at 10 (citing ALJ Decision at 27). Starbucks claims that the decisionmakers behind Whitbeck's discharge—Starbucks district manager Paige Schmehl and interim managing store manager Erin Lind—had no knowledge of any "unique" protected activity by Whitbeck; that is, they did not know that she was the store's "lead organizer" or that she was active in the media. Answer at 2, 17–18. However, Starbucks does not deny that Whitbeck engaged in protected, union-related activities or that Starbucks knew that she did so, which satisfies the Board's burden as to the first two factors of the Wright Line inquiry. See FiveCAP, 294 F.3d at 777–778.

As to animus, "evidence of an employer's anti-union animus can be purely circumstantial," and factors that can "contribute to a finding of an anti-union motive" include "the company's expressed hostility towards unionization combined with knowledge of the employees' union activities," "disparate treatment of certain employees compared to other employees with similar work records or offenses," and "a company's deviation from past practices in implementing the discharge; and proximity in time between the employees' union activities and their discharge." Id. at 777–778 (punctuation modified). "'Motive is a factual matter' in NLRB proceedings," McKinney v. Starbucks, 2022 WL 5434206, at *11 (quoting NLRB v. Mini-Togs, Inc., 980 F.2d 1027, 1032 (5th Cir. 1993)), and "'[t]he Board's inference of improper motivation must be upheld if it is reasonable in light of the proven facts,'" id. (quoting Birch Run Welding & Fabricating, Inc. v. NLRB, 761 F.2d 1175, 1179 (6th Cir. 1985)).

To show hostility toward unionization, the Board points to statements made by Starbucks's CEO evincing a preference for employees at non-unionized stores, as well as Schmehl's attendance at a (non-Workers United) union event, allegedly intended to surveil union activities. Mem. in

7

Supp. Pet. at 11.[4] The Board also asserts that Starbucks violated its own policies and treated Whitbeck disparately when it fired her instead of issuing a final written warning, the customary form of discipline for a violation of the two-partner rule. Id. at 11–12 (citing ALJ Decision at 29–31). In the Board's view, these same facts prevent Starbucks from demonstrating that it would have terminated Whitbeck absent her engagement in protected activities. Id. at 12–13.

Starbucks fights the probative value of these facts, insisting that Schmehl's attendance at an unrelated union event shows no animus toward the organization of her own employees, and that Whitbeck cannot identify any similarly situated employees who were given final written warnings for violating the two-partner rule. See Answer at 21–26.

This Court, however, will not weigh the value of these facts to make a decision on the merits. Ahearn, 351 F.3d at 237. It is sufficient for the Board to prevail at this stage that "facts exist which could support the Board's theory of liability." Ozburn-Hessey, 875 F.3d at 339 (punctuation modified). These facts do exist—and the Board's theory finds additional support in the ALJ's finding that Starbucks violated the NLRA. See Ahearn, 351 F.3d at 238; Remington, 773 F.3d at 471.

The Board has established reasonable cause to believe that Starbucks violated §§ 8(a)(3) and (1) of the NLRA. The Court next turns to what relief is just and proper.

### B. Just and Proper Injunctive Relief

A temporary injunction is just and proper when it is "necessary to return the parties to status quo pending the Board's proceedings in order to protect the Board's remedial powers under the NLRA . . . ." Ozburn-Hessey, 875 F.3d at 339 (punctuation modified). "Interim judicial relief

---

[4] This event was a "sip in" gathering hosted by the Huron Valley Labor Federation—a union not affiliated with Workers United—at which, according to Starbucks, none of Schmehl's employees were present. See Answer at 24–26.

is warranted whenever the circumstances of a case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless." Sheeran v. Am. Com. Lines, Inc. 683 F.2d 970, 979 (6th Cir. 1982) (punctuation modified).

The Court considers each item of relief requested by the Board. It will enter a separate order specifying the relief granted. Because some relief is just and improper—notwithstanding Starbucks's offer to reinstate Whitbeck—the Court denies Starbucks's motion to show cause as to dismissal of the petition.

### i. Reinstatement

Injunctive relief is generally proper under § 10 to reinstate a wrongly discharged employee. See, e.g., Ahearn, 351 F.3d at 239; Gottfried v. Frankel, 818 F.2d 485, 495–496 (6th Cir. 1987); McKinney v. Starbucks, 2022 WL 5434206, at *21.

Starbucks submits that no injunctive relief is appropriate because Starbucks has already offered to reinstate Whitbeck. See Mot. at 11. Starbucks relies primarily on Remington, where the court found it unnecessary to require offers of reinstatement to improperly terminated employees where the offending employer had already made those offers. 773 F.3d at 470–471. Remington, however, was decided at a much later stage of the proceedings; over seven months had passed since the employer's last offer of reinstatement, leading the court to conclude that an injunction would not change any employee's decision as to whether to return to work. See id.

Here, Starbucks's offer to allow Whitbeck to rejoin the company that fired her is mere weeks old. The Court is persuaded by Kerwin's assertion that the offer of reinstatement, without the protection of a court order, leaves Whitbeck vulnerable while this action proceeds before the Board. See Resp. at 10–11. Further, Starbucks's own case law supports entry of an order for

9

reinstatement even where the employer contends that it had already "voluntarily offered reinstatement." Gottfried, for & on Behalf of NLRB v. Mayco Plastics, Inc., 472 F. Supp. 1161, 1166 (E.D. Mich. 1979), aff'd, 615 F.2d 1360 (6th Cir. 1980) (ordering reinstatement even where that relief was allegedly offered because "[s]uch an order . . . may act to return the work force more nearly to the status quo than the offer already made," and no prejudice would result if employer was correct that it had "already effectively complied with such an order").

Accordingly, the Court will direct Starbucks to offer Whitbeck interim reinstatement to her former position, or if that position no longer exists, to a substantially equivalent position, without prejudice to her seniority or any other rights and privileges previously enjoyed.

### ii.    Cease-and-Desist Order

"[A] cease-and-desist order . . . is a standard part of a § 10(j) preliminary injunction." Paulsen v. PrimeFlight Aviation Servs., Inc., 718 F. App'x 42, 45 (2d Cir. 2017). For example, in McKinney v. Starbucks, which addressed the discharge of seven employees allegedly victimized in the anti-union campaign, the court found it just and proper to issue a cease-and-desist order to Starbucks. 2022 WL 5434206, at *21. It explained that, "[i]f the activity [violating the NLRA] was instead allowed to continue until the conclusion of the Board's administrative proceedings, there [was] a reasonable apprehension that the efficacy of the NLRB's final order may be nullified and the administrative procedures rendered meaningless." Id. (punctuation modified). Similarly, in the instant case, the ALJ also found it appropriate to issue a cease-and-desist order directed at Starbucks. ALJ Decision at 31–32.

Citing Remington, Starbucks suggests that injunctive relief is improper where an offer of reinstatement is pending. See Mot. However, Remington never considered the appropriateness of a cease-and-ease order, as the district court had already entered an order requiring the employer to

10

cease and desist from further violations of the NLRA. 773 F.3d at 467. Starbucks has not identified any cogent reason why this standard form of relief should not be issued in this § 10(j) action.

The Court will order that Starbucks cease and desist from discharging employees for engaging in activities protected under Section 7 of the Act.

### iii. Posting and Reading of Order

Kerwin also seeks an order requiring that Starbucks (i) post physical copies of this Court's order resolving this petition at all of Starbucks's locations, (ii) convene a mandatory meeting at the Ann Arbor Starbucks location at which this Court's order must be read, and (iii) distribute electronic copies of a Starbucks representative reading the order on all intranet or internet sites on which Starbucks communicates with its employees. See Pet. at 6–8; Mem. in Supp. Pet. at 21.

Starbucks contends that a mandated recitation of this Court's findings on a national scale is improper based on one termination at one Starbucks store. The Court agrees. As demonstrated by the Board's own case law, a required posting across multiple locations is appropriate where the offending company has pursued a corporate policy to violate labor laws. See Mem. in Supp. Pet. at 23 (citing Decaturville Sportswear Co. v. NLRB, 406 F.2d 886, 889 (6th Cir. 1969) (allowing for company-wide posting of order, among other relief, where respondent "directed a system-wide and centrally coordinated movement to commit unfair labor practices"); NLRB v. S.E. Nichols, Inc., 862 F.2d 952, 961 (2d Cir. 1988) (finding that, given "substantial evidence . . . of a conscious corporate-wide policy to coerce company employees in the exercise of their right to join or form labor unions, at least in the area subject to the jurisdiction" of the offender supervisor, "the Board had discretion to select remedies coextensive with that company policy . . . and to impose district-wide access and notice requirements in the eight stores in" one offending corporate district)); see

11

also ALJ Decision at 32–33 (explaining that nationwide posting is appropriate where "the respondent implemented an unlawful work rule or policy at each of its facilities nationwide" or where "the respondent has a record of committing unfair labor practices in multiple facilities").

Kerwin has made no such showing in this case, which concerns alleged NLRA violations at a single Starbucks store. The Board submits that it is prosecuting approximately 24 complaints against Starbucks concerning roughly 50 unlawfully discharged employees across the country. See Resp. at 7 n.1. However, these cases are generally in the early stages of NLRB review and have not yet been adjudicated by a district judge or ALJ. In the only other recent federal case that found that Starbucks had unlawfully discharged employees, the court determined that national publication and electronic distribution of its order were improper, as "[r]estoring the [one affected store] to the status quo, which is the focus of this Order, [did] not require broader dissemination." McKinney v. Starbucks, 2022 WL 5434206, at *21.[5] The ALJ in this case also declined to require a nationwide posting of his decision, noting that, "[c]ustomarily, the Board confines the notice-posting requirements of its orders "to the facilities at which the violations were committed." ALJ Decision at 32 (punctuation modified).

This Court finds that it is just and proper that relief be targeted to the single location where there is reasonable cause to believe that Starbucks violated the NLRA. Accordingly, consistent with the ALJ's decision, see ALJ Decision at 33, the Court will order that Starbucks (i) post physical copies of the Court's order specifying the relief awarded at its Ann Arbor Main Street

---

[5] During the hearing, the parties called the Court's attention to one other relevant adjudication: the finding of an ALJ on February 6, 2023 that Starbucks had engaged in unfair labor practices at a location in Denver, Colorado.

location; and (ii) convene one or more meetings at Starbucks's Ann Arbor Main Street location where the order specifying the relief awarded will be read aloud.[6]

### III. CONCLUSION

For the reasons explained above, the Court grants in part and denies in part Kerwin's § 10(j) petition (Dkt. 1) and denies Starbucks's motion for an order to show cause why the petition should not be dismissed (Dkt. 25). The Court will enter a separate order specifying the relief granted.

SO ORDERED.

Dated: February 17, 2023  　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan  　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[6] The Court finds no merit to Starbucks's argument that a required reading of this Court's order violates Starbucks's First Amendment rights by compelling speech. See Answer at 38–39. Courts have found a mandated reading to be an "effective but moderate way" to offer employees both "information" and "reassurance." United Nurses Ass'ns of Cal. v. NLRB, 871 F.3d 767, 789 (9th Cir. 2017) (punctuation and emphasis modified). Starbucks relies on Sysco Grand Rapids, LLC v. NLRB, where the Sixth Circuit denied a request that a notice of NLRA violations be read aloud. 825 F. App'x 348, 359–360 (6th Cir. 2020). Sysco, however, implicated First Amendment concerns because the proposed "notice [was] phrased as if [the offending employer's] employees [were] speaking the words." Id. at 359. The reading aloud of this Court's order contains no such risk.