UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH KERWIN,

        Petitioner,                                 Civil Action No. 22-cv-12761

v.                                                   HON. MARK A. GOLDSMITH

STARBUCKS CORPORATION,

        Respondent.
_____/

**OPINION & ORDER**
**DENYING RESPONDENT'S EMERGENCY MOTION FOR STAY (Dkt. 38)**

Before the Court is Respondent Starbucks Corporation's emergency motion (Dkt. 38) to stay this Court's February 23, 2023 order for injunctive relief (Dkt. 36) awarded to Petitioner Elizabeth K. Kerwin—Regional Director for the Seventh Region of the National Labor Relations Board (NLRB or Board)—under § 10(j) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(j). For the reasons that follow, the Court denies Starbucks's motion.[1]

**I. BACKGROUND**

On February 23, 2023, this Court found that Kerwin had shown reasonable cause to believe that Starbucks had violated §§ 8(a)(3) and (1) of the NLRA at its store on Main Street in Ann Arbor, Michigan based on its termination of Hannah Whitbeck, an employee involved with Workers United's union activities. See 2/23/23 Op. & Order at 4–8. Since her termination,

---

[1] Because oral argument will not aid the Court's decisional process, the issues will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to Starbucks's motion, the briefing includes responses filed by Kerwin (Dkt. 41) and amicus curiae union Workers United (Dkt. 42).

1

Starbucks has offered to reinstate Whitbeck, and she accepted interim reinstatement. See Br. in Supp. Mot. at 16.

This Court determined that certain injunctive relief was just and proper to restore the parties to the status quo pending the Board's proceedings on this matter. 2/23/23 Op. & Order at 8–14. Consistent with the relief ordered by the administrative law judge (ALJ) who adjudicated this dispute, see ALJ Decision at 34–36 (Dkt. 1-4), the Court ordered that Starbucks (i) offer reinstatement to Whitbeck, (ii) cease and desist from discharging employees for engaging in protected activities and from violating employees' rights under § 7 of the NLRA "[i]n any like or related manner," (iii) post physical copies of the Court's order for injunctive relief, and (iv) read aloud the Court's order—all at the Ann Arbor location. See 2/23/23 O. for Inj. Relief.[2]

Starbucks now requests that this Court either (i) stay its injunction order pending the outcome of Starbucks's appeal to the United States Court of Appeals for the Sixth Circuit, or (ii) modify the order and extend the compliance deadline by 30 days to allow the Sixth Circuit to rule on Starbucks's motion to stay in that court. See Br. in Supp. Mot. at 24.[3]

## II. ANALYSIS

In determining whether to grant a stay, a court considers four interrelated factors: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." Commonwealth

---

[2] The order for injunctive relief allows for either (i) a Starbucks official to read the order; or, at Starbucks's option, (ii) a Board agent to read the order. See 2/23/23 O. for Inj. Relief at 2–3.

[3] The Court originally ordered that Starbucks comply with its order for injunctive relief by March 2, 2023. See 2/23/23 O. for Inj. Relief. After Starbucks filed its present motion, the Court extended Starbucks's deadline to comply with the Court's order for injunctive relief until March 9, 2023, to allow for a response from Kerwin and a decision by this Court. See 3/1/23 Order (Dkt. 39).

v. Beshear, 981 F.3d 505, 508 (6th Cir. 2020) (punctuation modified). "[A] stay is an intrusion into the ordinary processes of administration and judicial review," and "the heavy burden for making out a case for such extraordinary relief rests on the moving party." Kentucky v. Biden, 23 F.4th 585, 593 (6th Cir. 2022) (punctuation modified).

### A. Likelihood of Success on Merits

"To demonstrate a likelihood of success on the merits, the movant must show, at a minimum, serious questions going to the merits." Dodds v. United States Dep't of Educ., 845 F.3d 217, 221 (6th Cir. 2016) (punctuation modified). It is insufficient to show a mere "possibility of success" on the merits. McKinney v. Starbucks Corp., 2022 U.S. App. LEXIS 24999, at *6 (6th Cir. Sept. 6, 2022).

Starbucks raises multiple challenges to the injunctive relief granted to Kerwin. For the reasons that follow, Starbucks is not likely to prevail on the merits of any of its arguments. This Court is particularly persuaded by McKinney, where Starbucks allegedly perpetrated the same harms as those at issue here—violations of §§ 8(a)(3) and (1) based on unlawful terminations— and the Sixth Circuit denied Starbucks's motion to stay the grant of very similar relief because Starbucks was not likely to succeed on the merits. See id. at *11.

### i. Whether Reading Remedy is Appropriate

Starbucks submits that a reading remedy is "generally not ordered by the NLRB in a single employee discharge case," and it argues that this case is not the extraordinary dispute that merits that relief. Br. in Supp. Mot. at 4. In Starbucks's view, this relief is appropriate in unusual circumstances, but not in the absence of evidence that Starbucks "has committed widespread unfair labor practices, is a 'recidivist,'" or subjects union activities "to an on-going chill." Id. at 8–9.

3

As Kerwin and Workers United's case law demonstrates, § 10(j) injunctive relief generally—and reading remedies in particular—are properly awarded even where a single employee or no employees at all have been terminated.[4]

Further, the scenario presented by this dispute—where Kerwin has shown reasonable cause to believe that Starbucks violated the NLRA less than a year ago, and where it appears that Starbucks decisionmakers remain in the same positions of power—is distinguishable from the one Sixth Circuit case cited by Starbucks where public reading requirements were found improper. See Sysco Grand Rapids, LLC v. Nat'l Lab. Rels. Bd., 825 F. App'x 348, 359 (6th Cir. 2020) (denying enforcement of public reading remedy, given "the passage of several years and the 30% turnover in [respondent] employees" as well as the retirement of senior manager who had voiced anti-union sentiment) (punctuation modified).

Starbucks also improperly discounts the risk of chill to employees foregoing their rights under the NLRA by ignoring facts and legal theories presented by Kerwin, including that (i) Whitbeck was a public and influential member of the unionization effort, see 2/2/23 Op. & Order at 2, 6–8; and (ii) the termination of union supporters—especially when the union is newly organized—can "have an inherently chilling effect on other employees," Ahearn v. Jackson Hosp. Corp., 351 F.3d 226, 239 (6th Cir. 2003).

---

[4] See, e.g., Schaub v. W. Michigan Plumbing & Heating, Inc., 250 F.3d 962, 970–972 (6th Cir. 2001) (affirming § 10(j) relief based on single termination); Overstreet v. One Call Locators Ltd., 46 F. Supp. 3d 918, 932 (D. Ariz. 2014) (ordering § 10(j) relief including reading where respondent terminated one employee); see also Ozburn-Hessey Logistics, LLC v. Nat'l Lab. Rels. Bd., 803 F. App'x 876, 888 (6th Cir. 2020) (affirming Board's grant of reading requirement even where individual violations were "not particularly egregious").

### ii. Whether Reading Implicates First Amendment Concerns and Property Rights

Starbucks insists that a reading remedy implicates First Amendment concerns, in continued reliance on Sysco, 825 F. App'x at 359. Br. in Supp. Mot. at 5–8. This Court has already explained why that case is distinguishable and why Starbucks's argument lacks merit. See 2/23/23 Op. & Order at 14 n. 7.

Starbucks also argues for the first time that the requirement that Starbucks allow a Board agent to attend each reading "impairs Starbucks'[s] right to exclude persons from its property." Br. in Supp. Mot. at 7. The case cited by Starbucks casts no doubt on the propriety of allowing government agents to attend one-time reading events in aid of enforcing federal law. See Cedar Point Nursery v. Hassid, 141 S. Ct. 2063, 2080 (2021) (finding that state regulation allowing labor organizations to regularly access employer's property to solicit union support constituted taking).

### iii. Whether the Cease-and-Desist Order Goes Beyond Status Quo

Starbucks argues that the cease-and-desist order goes beyond the status quo because it enjoins Starbucks (i) from "discharging any partners at the Main Street store, not just Whitbeck," and (ii) from interfering with employees' exercise of § 7 rights. Br. in Supp. Mot. at 9–10. In Starbucks's view, this order "go[es] beyond the allegations alleged in the underlying complaint in terms of the employees they purport to reach" and improperly seeks to "regulate future conduct." Id. at 10 (emphasis in original).

In fact, the Board's initial complaint sought to address harms beyond the single termination of Whitbeck, as the Board alleged that Whitbeck "assisted and supported" Workers United in its labor activities and that Starbucks terminated her "to discourage employees from engaging" in protected activities. Board Compl. at 2 (Dkt. 1-3). An order "directing Starbucks to cease unlawful behaviors" is appropriate to protect the Board's remedial powers as to all employees at the store

where Starbucks terminated a union supporter. McKinney v. Starbucks Corp., No. 2:22-cv-2292-SHL-CGC, 2022 WL 5434206, at *21–*22 (W.D. Tenn. Aug. 18, 2022) (granting in part Board's petition for § 10(j) injunction). This relief "[a]chiev[es] the status quo between Starbucks" and its employees and mitigates the "reasonable apprehension" that, absent interim protection, "the efficacy of the NLRB's final order may be nullified and the administrative procedures rendered meaningless." Id. at *21 (punctuation modified). For this reason, a cease-and-desist order—including an order applicable to future conduct—is a "'standard'" form of § 10(j) relief. 2/23/23 Op. & Order at 10 (quoting Paulsen v. PrimeFlight Aviation Servs., Inc., 718 F. App'x 42, 45 (2d Cir. 2017)). Courts regularly approve cease-and-desist orders granting the relief ordered here, including the cessation of § 7 violations based on the discharge of employees in violation of § 8(a).[5]

### iv. Whether Cease-and-Desist Order Conflicts with Normal § 10(j) Processes

Starbucks asserts that the Court's cease-and-desist order "short circuit[s]" the requirement under § 10(j) that the Board issue a complaint before it seeks an injunction because it allows the Board to initiate proceedings based on the unlawful discharge at the Ann Arbor store pursuant to the Court's order. Br. in Supp. Mot. at 10–11.

This argument—raised here for the first time before this Court—appears to be a challenge applicable to all cease-and-desist orders included in § 10(j) injunctions. But this form of relief is "standard," Paulsen, 718 F. App'x at 45, and is expressly envisioned by § 10(j), see 29 U.S.C. § 160(c) (stating that the Board, upon concluding that a respondent has engaged in unfair labor

---

[5] See, e.g., McKinney, 2022 WL 5434206, at *22 (enjoining § 7 violations executed "[i]n any other manner"); McKinney, 2022 U.S. App. LEXIS 24999, at *11 (denying motion to stay relief granted in McKinney, 2022 WL 5434206); Overstreet, 46 F. Supp. 3d at 931 (finding reasonable cause to believe employee termination violated § 8(a) and enjoining § 7 violations "[i]n any like or related manner").

practice, shall serve "an order requiring such person to cease and desist from such unfair labor practice"). This kind of order has also been approved by the Sixth Circuit in § 10(j) injunctive relief actions. See, e.g., Ahearn, 351 F.3d at 240. If Starbucks's argument were adopted, no Board cease-and-desist order could apply beyond the employees improperly discharged, though precedent clearly allows courts to enjoin future NLRA violations after the Board has shown that the respondent engaged in like conduct. See, e.g., McKinney, 2022 WL 5434206, at *22; McKinney, 2022 U.S. App. LEXIS 24999, at *11.

      v.      **Whether Cease-and-Desist Order is Broad and Vague**

Starbucks argues that the Court's cease-and-desist order violates Federal Rule of Civil Procedure 65(d), on the theory that it is (i) overly broad because it grants relief beyond the scope of the alleged harm, and (ii) vague because it deprives Starbucks of sufficient notice about what conduct is prohibited and of the procedural due process protections afforded by § 10(j). Br. in Supp. Mot. at 12–16.

Rule 65(d) requires that an order granting injunctive relief "state the reasons why it issued," "state its terms specifically," and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(A)–(C). Rule 65(d) does not bar a court from referencing a separate opinion to explain the reasons for injunctive relief. This Court elaborated at length on its reasons for granting injunctive relief in its opinion and order; it then generally described those reasons in its order for injunctive relief and specifically described the acts restrained in that same order. See 2/23/23 Op. & Order at 10–13; 2/23/23 O. for Inj. Relief at 1–2. Rule 65(d) is satisfied.[6]

---

[6] Workers United argues that the Rule 65 standard does not apply to § 10(j) proceedings. See Amicus Resp. at 10–11. Whether or not it applies, this Court has complied with Rule 65.

Starbucks is incorrect to frame the Court's order for injunctive relief as a vague command to obey the law. See Br. in Supp. Mot. at 13. There is reasonable cause to believe that Starbucks violated the NLRA by terminating an employee for engaging in protected activities, and Starbucks is prohibited from doing so again and from violating employee rights "[i]n any like or related manner" at the Ann Arbor store. 2/23/23 O. for Inj. Relief at 1–2. This is a common form of relief even narrower than a § 10(j) injunction already awarded for unlawful terminations against the same respondent. See McKinney, 2022 WL 5434206, at *22 (enjoining § 7 violations executed "[i]n any other manner").

As to due process, Kerwin considers the suggestion "absurd" that a cease-and-desist order would allow the Board to seek relief in federal court without properly investigating the facts giving rise to any charge of a future violation. See Pet. Resp. at 6. The Court has no reason to doubt that Starbucks's due process rights will be safe in any future proceedings. And nothing that the Court has done will bar Starbucks from challenging any future action by Kerwin that Starbucks might claim violates due process.

### vi. Whether Reinstatement is Unnecessary and Moot

Starbucks submits that the order to reinstate Whitbeck is unnecessary and moot, given that Whitbeck was offered and accepted interim reinstatement. Br. in Supp. Mot. at 16–17; see also id. at 10. Starbucks finds the Court's consideration that Whitbeck remained vulnerable in the absence of a court order to be "a supplement to NLRB remedies" and "based on pure speculation." Id. at 17.

This Court already explained its rationale for ordering the reinstatement of Whitbeck and noted that Starbucks's own case law supports entry of an order for reinstatement even where the employer contends that it has already "'voluntarily offered reinstatement.'" 2/23/23 Op. & Order

8

at 9–10 (quoting Gottfried, for & on Behalf of NLRB v. Mayco Plastics, Inc., 472 F. Supp. 1161, 1166 (E.D. Mich. 1979), aff'd, 615 F.2d 1360 (6th Cir. 1980)).

### vii. Whether Status Quo is Not Possible and § 10(j) Relief is Unnecessary

Starbucks asserts that this Court did not specifically find that a return to the status quo is possible, and that "the status quo that existed prior to Whitbeck's discharge no longer exists because the Union won the underlying election in June 2022." Br. in Supp. Mot. at 17–18. In Starbucks's view, the Court also did not adequately explain why § 10(j) relief is necessary to protect the Board's remedial powers, "especially given Whitbeck's reinstatement." Id. at 19.

Starbucks appears to suggest that § 10(j) injunctive relief is proper only if Starbucks and its employees could be returned to a "status quo" in which no union existed at the Ann Arbor store. However, there is no "particular magic in the phrase 'status quo'" requiring duplication of every aspect of the prior time period to justify injunctive relief. Stenberg v. Cheker Oil Co., 573 F.2d 921, 925 (6th Cir. 1978). "Status quo" serves as a functional concept "to protect the Board's remedial powers under the NLRA" prior to issuance of a final Board order. McKinney v. Ozburn-Hessey Logistics, LLC, 875 F.3d 333, 339 (6th Cir. 2017) (punctuation modified). This Court found that a preliminary injunction protected the Board's remedial powers in this case by mitigating the intimidatory power of an unlawful termination at the workplace, thus ensuring that a final order would be efficacious. See 2/23/23 Op. & Order at 8 (citing Ozburn-Hessey, 875 F.3d at 339). This relief was eminently appropriate, as demonstrated by several cases upholding § 10(j) injunctions during the "critical moment" after employees have unionized at new locations but before unions have agreed to first contracts with employers. Ozburn-Hessey, 875 F.3d at 341; see also Ahearn, 351 F.3d at 239 (affirming grant of § 10(j) relief where "the Union was quite new

9

and had not even signed its first contract, making bargaining units highly susceptible to management misconduct") (punctuation modified).

Starbucks has failed to show a likelihood of success on the merits. This failing is sufficient for a denial of Starbucks's motion. See McKinney, 2022 U.S. App. LEXIS 24999, at *11. The Court nonetheless considers Starbucks's arguments as to the remaining three factors.

### B. Balance of Hardships

Starbucks argues that it would be irreparably harmed absent a stay because the relief awarded is unjust, consistent with its arguments described above. See Br. in Supp. Mot. at 21–22. Starbucks has failed to show that it will be irreparably harmed by injunctive relief targeted at a single store. Kerwin notes that Starbucks does not support its argument with "any estimate of any financial cost expected" or allegations as to "the length of time or extent of any alleged potential harm." Pet. Resp. at 9. And, as discussed, Starbucks's specific attacks on the relief awarded—including the supposed implication of First Amendment and due process rights—lack merit. Starbucks references the threat of criminal prosecution for violating a cease-and-desist order, see Br. in Supp. Mot. at 21, but if Starbucks finds itself in that position, it will be able to rely on the protections provided by criminal law—and will have only itself to blame.

Starbucks also argues that the prospect of harm to others is low if the Court were to stay the order granting injunctive relief because Whitbeck has already been reinstated, Workers United's election was successful, and there is insufficient evidence of chill resulting from Whitbeck's termination. Id. Starbucks is incorrect. Absent the relief awarded to restore the Ann Arbor Starbucks employment conditions to the status quo and protect the Board's remedial power, unionized employees at that location face a genuine prospect of harm. See Gottfried, 472 F. Supp. at 1166 (explaining need for injunctive relief including reinstatement despite respondent's pending

offer of reinstatement, stating: "When a company's action creates an atmosphere inhospitable to union adherents[,] they may be reluctant to once again subject themselves to those conditions."); Ahearn, 351 F.3d at 239.

### C. Public Interest

In Starbucks's view, it is in the public's interest not to allow an improper order to go into effect. Br. in Supp. Mot. at 23. But Starbucks has not demonstrated that the injunctive relief is improper. Further, there is an overwhelming public interest in protecting employees under the terms of the NLRA. See NLRB v. Hiney Printing Co., 733 F.2d 1170, 1171 (6th Cir. 1984) (noting that Board is "charged with serving the public interest to enforce labor relations rights" and thus protects "public" rights).

Starbucks has failed to carry its "heavy burden" for the "extraordinary relief" it requests. Kentucky, 23 F.4th at 593 (punctuation modified). Because Starbucks's requests lack merit, the Court denies its motion for a stay.[7]

### III. CONCLUSION

For the reasons explained, the Court denies Starbucks's motion for a stay (Dkt. 38).

SO ORDERED.

Dated: March 6, 2023  s/Mark A. Goldsmith
       Detroit, Michigan  MARK A. GOLDSMITH
                                             United States District Judge

---

[7] Starbucks's motion for a stay pending appeal asked, in the alternative, that the Court grant a 30-day stay to allow for the processing of a motion to stay with the Sixth Circuit. The Court did grant a limited extension of time for Starbucks to comply with the injunction until March 9, 2023, to allow this Court to receive a response from Kerwin and decide this motion. The factors discussed above lead this Court to conclude that there is no justification for extending the limited extension for compliance beyond March 9, 2023, and, therefore, it denies Starbucks's alternative request for a 30-day stay.